268 A.2d 714.

ROBERT W. FLINT, JR. *vs.* JOHN F. SHARKEY, *Acting Warden*.

AUGUST 14, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J.  This is a petition for habeas corpus wherein the petitioner seeks to vacate a plea of guilty he gave to an indictment charging him with robbery.  His prayers for relief are grounded on his sworn statements that his plea was neither an intelligent nor a voluntary act.

In February 1964, petitioner was charged with robbery in three separate indictments.  Two of the indictments concerned the holdup of a loan company.  The third indictment related to the holdup at a liquor store.  The petitioner who was represented by the public defender's office entered pleas of not guilty to all the indictments.  Trial was begun on the loan company indictments in March 1964.  After two days of trial, petitioner withdrew the innocent pleas and pleaded guilty to all three pending indictments.  He received a six-year sentence on each of the loan company indictments—the sentences were to run concurrently and sentence was deferred on the liquor store indictment.

The petitioner was paroled in October 1967.  In 1969, he was charged with another robbery—a holdup of a bank.  The Attorney General then moved for imposition of the sentence previously deferred on the liquor store indictment.  It was at this point petitioner began this attempt to vacate his 1964 guilty plea to the liquor store robbery by filing in the Superior Court a motion to set aside this plea.  A hearing was held on his motion and thereafter the motion was denied.[1]  Thereupon a justice of the Su-

---

[1] In our consideration of the instant petition, we have examined the record compiled during the hearing on defendant's motion to vacate.

perior Court found that defendant had violated the terms of his deferred sentence and sentenced him to 12 years at the Adult Correctional Institutions. The petitioner in these proceedings is attempting to vitiate this 12-year sentence.

The petitioner entered his guilty plea to the liquor store indictment on March 13, 1964. The following year, on January 13, 1965, this court declared that it is the obligation of the court before accepting a nolo or a guilty plea to ascertain if the defendant, even though represented by counsel, is aware of the nature and consequence of such a plea and if he is not, to advise and admonish him fully concerning those consequences. *Cole* v. *Langlois,* 99 R. I. 138, 206 A.2d 216. We went on to state that failure on the part of the trial judge to comply with this obligation did not necessarily mean that the defendant's plea must be set aside and he be given an opportunity to replead. In such circumstances, we said that the defendant in order to vacate his plea must establish by the preponderance of the evidence that he was not otherwise aware and appreciative of the consequences of his plea. *Hall* v. *Langlois,* 105 R. I. 642, 254 A.2d 282. The proposition that a sentencing judge is to ascertain if the defendant knows the effect of his plea and to inform him with respect thereto, if he does not, is known in this jurisdiction as the *Cole* rule.

Last year in *Bishop* v. *Langlois,* 106 R. I. 56, 256 A.2d 20, we were confronted with the issue as to whether or not we should give the rule in *Cole* retroactive application. Mindful of the destructive impact such a holding would have on the administration of justice in this state, we held that the rule in *Cole* would apply only to pleas entered subsequent to January 13, 1965, the date of our decision in *Cole.* We have issued the writ in the instant cause in order to clarify the extent of our holding in *Bishop.* The

simple and sole issue presented to us in *Bishop* was the retroactivity of the *Cole* rule. The rule in *Bishop* does not prevent *any* collateral attack on a pre-*Cole* plea but *only one* which is based upon the defendant's claim that he did not understand the nature and consequences of his plea because he was not so advised by the court.

On June 2, 1969, the United States Supreme Court ruled that it was reversible error for a trial judge in a state court to accept a guilty plea without an affirmative showing on the record that the plea was made intelligently and voluntarily. *Boykin* v. *Alabama,* 395 U. S. 238, 89 S.Ct. 1709, 23 L.Ed 274. The Court in effect held that the state courts in accepting a guilty plea shall follow a procedure patterned after Rule 11 of the Federal Rules of Criminal Procedure. See *Bishop* v. *Langlois, supra.*

While the Supreme Court did not rule on the retroactive aspect of *Boykin,* it is logical to assume that in the light of *Halliday* v. *United States,* 394 U. S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16, the rule in *Boykin* is to be applied prospectively. *Halliday* denied retroactivity to *McCarthy* v. *United States,* 394 U. S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418, in which the Supreme Court made it clear that the federal district courts must comply with the provisions set forth in Rule 11 and that failure to do so would necessitate a setting aside of the plea and sentence.

Although the holding in *McCarthy* was based exclusively on Rule 11 and not constitutional considerations, the Court in *Halliday* said that:

> "Nevertheless, it is appropriate to analyze the question of that decision's retroactivity in terms of the same criteria we have employed to determine whether constitutionally grounded decisions that depart from precedent should be applied retroactively." 394 U. S. at 832, 89 S.Ct. at 1499, 23 L.Ed.2d at 19.

Thus the *Halliday* determination governs *Boykin.* By like reasoning, we hold that *Boykin* shall be applied prospec-

tively only. For cases in accord with this proposition see *State* v. *Griswold,* 105 Ariz. 1, 457 P.2d 331; *In re Tahl,* 1 Cal.3d 122, 460 P.2d 449; *Silverberg* v. *Warden,* 7 Md.App. 657, 256 A.2d 821; *Endsley* v. *Cupp,* (Ore.App.), 459 P.2d 448; *Commonwealth* v. *Godfrey,* 434 Pa. 532, 254 A.2d 923; *Ernst* v. *State,* 43 Wis.2d 661, 170 N.W.2d 713.

While *Halliday* did not make *McCarthy* retroactive, the Supreme Court pointed out that "* * * a defendant whose plea has been accepted without full compliance with Rule 11 may still resort to appropriate post-conviction remedies to attack his plea's voluntariness.[2] Thus, if his plea was accepted prior to our decision in *McCarthy,* he is not without a remedy to correct constitutional defects in his conviction." 394 U. S. at 833, 89 S.Ct. at 1499, 23 L.Ed.2d at 20.

It is clear that the prime purpose of *Boykin* was to insure that a complete record would be compiled at the time a guilty plea is entered so that it is obvious that an accused has made an intelligent and voluntary waiver of his constitutional rights. Unquestionably, a personal inquiry by the sentencing judge assures the reliability of this determination, but if the plea is pre-*Boykin,* a defendant is not without remedy to correct any constitutional deficiencies in his conviction. In *Halliday,* the Court pointed out that the accused had been afforded a hearing on the question of the voluntariness of his plea. Thus logic demands that while the formal requirements of *Boy-*

---

[2]In *Bishop* v. *Langlois, supra,* 106 R. I. at 66, 256 A.2d at 25, n. 3, we alluded to the court's use of the term "voluntariness" in *Halliday* and remarked that we construed "voluntariness" as used in *Halliday* to be limited to a post-conviction review of a plea entered because of duress, coercion or fraud rather than embracing the full panoply of rights granted a defendant under Rule 11. It is clear to us now, however, that when the Court in *Halliday* spoke of the post-conviction review of the voluntariness of a defendant's plea, it was using "voluntariness" in a much broader sense, in other words, a guilty plea would be set aside if it was shown that the plea was not willingly or knowingly made.

536

*kin* be denied a retroactive effect, retroactivity must be afforded to the substantive rights which the formal requirements of *Boykin* are designed to protect.

Some of the substantive rights involved in a plea of guilty were recently described in *Brady* v. *United States,* 397 U. S. 742, 748, 90 S.Ct. 1463, 1468-69, 25 L.Ed.2d 747, 756, when the Court said:

> "That a guilty plea is a grave and solemn act to be accepted only with care and discernment has long been recognized. Central to the plea and the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment. He thus stands as a witness against himself and he is shielded by the Fifth Amendment from being compelled to do so — hence the minimum requirement that his plea be the voluntary expression of his own choice. But the plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial— a waiver of his right to trial before a jury or a judge. Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."

Even though we shall not give retroactive application to the formal requirements of *Boykin,* we shall afford protection to the substantive rights enunciated therein for it is patent to us that a guilty plea, be it pre or post-*Boykin,* must be a willing and knowing act of the defendant. It follows, therefore, that any accused who has pleaded guilty prior to the date of *Cole* may seek post-conviction relief in the courts of this state.

Accordingly, the rule in this jurisdiction in the light of the recent decisions of the United States Supreme Court shall be as follows:

1. If a nolo[3] or guilty plea was entered prior to *Cole,* it will be vacated if the accused can show that his plea was not knowingly and willingly made. The burden of proof on a petition for habeas corpus based on an alleged invalid pre-*Cole* guilty plea rests on the petitioner. He must establish by a preponderance of the evidence that he did not willingly and knowingly enter his plea.

2. If a nolo or guilty plea was entered subsequent to *Cole,* such a plea may be vacated if the sentencing judge failed to ascertain if the accused knew of the effect of his plea and failed to inform the accused with respect thereto if he did not, unless it can be shown that the accused was, at the time he pleaded, otherwise sufficiently informed as to the nature of his plea and the consequences thereof.

3. If a nolo or guilty plea was entered subsequent to *Bishop* or *Boykin,* the plea will be vacated unless the record shows that the court has conducted an on-the-record examination of the defendant before accepting his plea to determine if the plea is being made voluntarily with an understanding of the nature of the charge and the consequences of the plea.

Having in mind these principles, we now turn to the merits of the present petition. The petitioner first describes his guilty plea on the liquor store robbery as being coerced. He contends that he was forced to plead guilty to this indictment so that he could receive favorable treatment on the loan company indictments. The petitioner maintains that he steadfastly denied any involvement in the liquor store holdup.

As noted before, at the time petitioner pleaded guilty to the liquor store robbery, he was on trial for the loan company holdup. His defense to the loan company charges

---

[3]In Rhode Island, a plea of nolo contendere, is, for all practical purposes, equivalent to a plea of guilty. *Cole* v. *Langlois, supra.*

was that at the time of that holdup he was at work. As the trial progressed, it became evident to petitioner and his counsel that his employer's time cards did not support petitioner's alibi defense. Since his defense was in the state of almost complete collapse, petitioner was faced with a dilemma. Should he continue on with the trial with its probability of a guilty verdict and a consequent severe sentence, or should he make a bargain with the Attorney General and plead guilty to all three indictments? He made the bargain, and at the hearing in the Superior Court on his motion to vacate his guilty plea in the liquor store holdup, petitioner conceded that his decision to plead guilty to the liquor store indictment was motivated by the fact that his "game plan" for the trial went awry. There was no coercion. When he appeared for sentencing in 1964, there were no protestations that petitioner had not held up the liquor store. There is nothing to support petitioner's 1970 assertion that in 1964 he was compelled to plead guilty to the liquor store robbery. What is apparent is that when the time cards would not corroborate the planned alibi defense, petitioner decided to make the best of what to him was a bad situation and admit his guilt on all three indictments.

We are well satisfied that petitioner's guilty plea was willingly made in the interest of obtaining the most favorable disposition of the three indictments. A plea entered under such circumstances will not be held to be invalid when it is motivated by the defendant's desire to accept the "* * * certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged." *Brady* v. *United States, supra,* 397 U. S. at 751, 90 S.Ct. at 1470, 25 L.Ed.2d at 758. The penalty for robbery in this state is a minimum of five years in prison with a maximum of life im-

prisonment. While petitioner's guilty plea might have been motivated in part to lessen the potential punishment available to him, we are convinced that his plea was voluntarily made.

We do not believe the petitioner's averment that he did not know what he was doing when he pleaded in 1964. As the petitioner is no stranger to guns and violence, he is also no stranger to the criminal courts of this state. At various times in 1960 he pleaded nolo and received deferred sentences on four charges of forging and uttering checks. Three years later, in 1963, he was brought before the Superior Court because he had violated the terms of the deferred sentences given on two of the charges and he received two consecutive one-year jail sentences. It is inconceivable, therefore, that only a short time later in 1964 he was unaware of the nature and the meaning of his guilty plea to the liquor store holdup and the effects thereof. In addition, there is testimony in the record that the sentencing judge discussed with the petitioner the consequences if he violated the terms of the 1964 deferred sentence. The petitioner's assertion that he did not knowingly plead guilty to the liquor store holdup when it is contrasted with the record before us is simply unbelievable.

The petition for habeas corpus is denied and dismissed; the writ heretofore issued is quashed; the records furnished by the Superior Court are hereby ordered returned; and the petitioner is remanded to the custody of the respondent warden.

ROBERTS, C. J., concurring. I concur in the conclusion reached by the majority, but I am compelled myself to conclude with reluctance that the effect of this decision is to overrule *Bishop* v. *Langlois,* 106 R. I. 56, 256 A.2d 20, in which we denied retrospective operation of the rule stated in *Cole* v. *Langlois,* 99 R. I. 138, 206 A.2d 216.

Motion to reargue denied.

*Strauss, Factor, Chernick & Hillman, William C. Hillman,* for petitioner.

*Herbert F. DeSimone,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, for respondent.